UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

QUEEN E. LAMAR,
    Plaintiff,

-v-                                  CASE NO. 8:08-CV-58-T-DNF

MICHAEL J. ASTRUE,
Commissioner of Social Security,
    Defendant.
_____/

## OPINION AND ORDER[1]

This matter is before the Court on the Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security of the Social Security Administration ("the Commissioner") denying her claim for disability, disability insurance benefits, and Supplemental Security Income (SSI)[2]. The Plaintiff timely pursued and exhausted her administrative remedies making this claim ripe for review under section 216(i) and 223(d), respectively of the Social Security Act, as amended and disabled under section 1614(a)(3)(A) of the Act. The Commissioner has filed a transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda. For the reasons set forth below, the Court finds that the Commissioner's decision is due to be **AFFIRMED**.

---

[1]    Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred by Order to Magistrate Judge Thomas B. McCoun III on October 2, 2008. (Doc .# 24). On January 16, 2009, the case was reassigned to Magistrate Judge Douglas N. Frazier. (Doc. #26).

[2]    Because the disability definitions for DIB and SSI are identical, cases under one statute are persuasive as to the other. Patterson v. Bowen, 799 F.2d 1455, 1456 (n.1 (11th Cir. 1986); McCruter v. Bowen, 791 F.2d 1544, 1545 n.2 (11TH Cir. 1986).

1

## I. SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ'S DECISION AND STANDARD OF REVIEW

The Plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423 (d) (1)(A); 1382c(a)(3)(A). The Commissioner has established a five-step sequential evaluation process for determining whether the plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 416.920(a)(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The Plaintiff filed applications for disability, disability insurance benefits and Supplemental Security Income on August 9, 2003, and an application for Supplemental Security Income with a protective filing date of May 15, 2003. The Plaintiff alleges disability since December 14, 2001. (Tr. 55, 284-87). The Plaintiff's application was denied initially and upon reconsideration (Tr. 29, 30, 28, 283). The Plaintiff was represented by counsel and testified at the hearing held on April 18, 2006, along with an impartial vocational expert. (Tr. 328). Administrative Law Judge (ALJ) Elving L. Torres denied benefits in his decision dated April 19, 2007. (Tr. 15-23). The Plaintiff requested a review of the hearing decision and on December 6, 2007, the Appeals Council denied the request. (Tr. 3). The Plaintiff has exhausted her administrative remedies, and timely filed a complaint with this Court.

At Step 1 the ALJ found the Plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 14, 2001[3]. (Tr. 19). At Step 2 the ALJ found the Plaintiff suffered from obesity; non-insulin dependent diabetes mellitus; obstructive sleep apnea with status-post turbinate reduction. (Tr. 31). At Step 3 the ALJ found these impairments did not meet or equal, either singly or in combination with any other impairments, any of the impairments in Appendix I, Listing of Impairments, 20 C.F.R. §§ Part 404, Subpart P, Regulations No. 4. (20 C.F.R. 404.1520(d). (Tr. 19). At Step 4 the ALJ determined the Plaintiff had the residual functional capacity to perform a wide range of light work. The Plaintiff could occasionally climb, balance; stoop; crouch and crawl but never climb ropes, scaffolds and avoid open and unprotected heights. (Tr. 19). At step 5, the burden shifts to the Commissioner only after the Plaintiff has proven that she is unable to engage in past relevant work and to determine if there is other work available that the Plaintiff can perform. 20 C.F.R. §§ 494.1520(g), 416.920(g). In the instant case, it is not necessary to proceed to step 5. With the testimony of the vocational expert, the ALJ determined that the Plaintiff's could perform her past relevant work as a health insurance clerk and was therefore, not disabled. (Tr. 22).

The Court reviews the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence is more than a

---

[3] The Plaintiff returned to work briefly in 2001 and had earnings of $1,527.45 for that year. The ALJ determined the Plaintiff's work attempt to be unsuccessful.

scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Crawford, 363 F.3d at 1158. Even if the evidence preponderates against the Commissioner's findings, the Court must affirm if the decision reached is supported by substantial evidence. Crawford, 363 F.3d at 1158-59.

The Court does not decide facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). The magistrate judge, district judge and appellate judges all apply the same legal standards to the review of the Commissioner's decision. Dyer, 395 F.3d at 1210; Shinn ex rel. Shinn v. Commissioner of Social Security, 391 F.3d 1276, 1282 (11th Cir. 2004); Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004).

## II. REVIEW OF FACTS AND CONCLUSIONS OF LAW

### A. BACKGROUND FACTS:

The Plaintiff was born on April 23, 1953 and was fifty-four years old at the time of the ALJ's decision. (Tr. 55, 284, 308). The Plaintiff has a high school education and worked in the past as a Fiscal Assistant II (insurance billing) for the county health department. (Tr. 79, 310). The Plaintiff completed a work history report stating she had worked at this position from "1980 to 2003". The Plaintiff related that she was fired from this position. The Plaintiff had used all her vacation time and sick time up because of chronic knee pain, chronic sinusitis and sleep apnea and advised she could no longer do her job.

The Plaintiff was treated by Kenneth Neifeld, M.D., on July 6, 2000, for left knee pain. The Plaintiff underwent a computed tomographi (study of her sinuses) which was abnormal in January of 2002. The treating physician, Dr. Joseph Baker prescribed medications which only provided temporary relief. He diagnosed allergic rhinosinusitis, exogenous obesity and sleep apnea. [Tr. 225-238].

The Plaintiff was also treated by Dr. Willliam Lowry who performed an arthroscopy in December of 2001 with a final diagnosis of "[i]nternal derangement of the right knee with torn medial meniscus and chondromalacia medial compartment grades 3 and 4".

The Plaintiff was seen by Dr. Marina Barkov on August 28, 2003. Dr. Barkov's treatment notes indicated that the Plaintiff had sinus congestion, hypertension, diabetes mellitus, sleep apnea and obesity. [Tr. 240-267). Dr. Barkov determined that the Plaintiff was unable to perform any work at all and could not lift any weight. [Tr. 271]. However, the medical signs and/or laboratory findings did not support this as the Plaintiff did not have any upper-body impairment that would interfere with the ability to lift and she did not have a back or similar impairments that would limit her to sitting for only one hour. [Tr. 270].

The Plaintiff was seen by Licensed Psychologist, Linda Appenfeldt, upon referral from the Division of Disability Determinations Medical Disability Adjudicator, Mr. Paul Ranney. The Plaintiff presented as a "well-developed, well-nourished, overweight, 50 year old. The Plaintiff was appropriately dressed with a neat and clean appearance". The Plaintiff drove to the appointment unaccompanied and arrived on time. [Tr. 132]. The Plaintiff's posture was normal and her "[g]ait, stance and ambulation, were essentially unremarkable and she ambulated without the use of an assistive device". The Plaintiff was oriented to

time, place, person and situation. The Plaintiff was alert cooperative compliant and answered all questions posed. Dr. Appenfeldt found no evidence of "[o]vert delusional material, formal thought disorder or anxiety" during the evaluation. [Tr. 133]. The Plaintiff reported she has sleep apnea and sleeps a total of approximately 15 hours out of 24. [Tr. 133]. Ms. Appenfeldt's notes reveal: "[I]MPRESSION(S): 1. Adjustment Disorder with Depressed Mood, 309.0 DSM-IV. [Tr. 135].

The Plaintiff was seen by Steven A. Gross, M.D., ophthalmologist on October 16, 2003. In a letter to Dr. Barkov dated October 22, 2003, Dr. Gross advised that the Plaintiff has bilateral proptosis, "[w]hich could very well be on the basis of Graves ophthalmopathy. This might account for her increased intraocular pressure." Dr. Gross requested a CT of the brain and orbits, a Humphrey visual field 24-2, thyroid function, and an acetycholine receptor antibody panel. The Plaintiff was started on Xalatan because of her elevated intraocular pressures. The Plaintiff was advised to return in two weeks. [Tr. 213-214].

The Plaintiff underwent a bilateral inferior turbinate reduction on December 19, 2003, which was performed by Dr. Baker. Upon follow-up, Dr. Baker reported that the Plaintiff was doing better and there was no evidence of an infection. Dr. Baker concluded that the turbinate appeared to have been reduced. [Tr. 18].

The ALJ also determined the Plaintiff's RFC by considering the medical opinions of the state agency experts. [Tr. 22, 181-202). On February 23, 2004, the Plaintiff was found to not have a mental illness and had no psychologically-based limitations. [ Tr. 181-84]. On March 8, 2004, the state agency expert assessed the Plaintiff would be able to perform light work with limited environmental limitations. [Tr. 195-202]

The Plaintiff was seen by Dr. Joe Baker regarding her sinus problems. Dr. Baker diagnosed allergic rhinosinusitis, exogenous obesity and sleep apnea. Dr. Baker completed a questionnaire in March of 2006 regarding the Plaintiff's sleep apnea but he was not able to answer many of the questions. His response to the Plaintiff's exertional and non exertional limitations were "[I] don't know." [Tr. 225-228].

**B.  SPECIFIC ISSUES:**

**(1)  THE PLAINTIFF ARGUES THAT THE CASE SHOULD BE REMANDED BECAUSE OF NEW AND MATERIAL EVIDENCE SUBMITTED TO THE APPEALS COUNCIL**

The Plaintiff submitted new evidence at the time she appealed to the Appeals Council. The evidence presented was the treatment notes provided by Dr. Vladimir Alexander where he initially diagnosed the Plaintiff with osteoarthritis of the right knee with synovitis. The Plaintiff received injections beginning in August of 2004 and ending in August of 2006. Diagnosis was severe osteoarthritis of the right knee-medial hemi-joint.

The Plaintiff contends good cause existed for her failure to submit this evidence at the time of the hearing. The attorney representing the Plaintiff at that time failed to get that information. Present counsel obtained that information and submitted it to the Appeals Council. The Plaintiff argues that this case should be remanded for the ALJ to reconsider the new and material evidence.

This court should not evaluate evidence previously submitted to the Appeals Council under sentence six of 42 U.S.C. § 405(g). Sentence Six allows the district court to remand a case to the Commissioner to consider previously unavailable evidence; it does not grant a district court the power to remand for reconsideration of evidence previously considered by

7

the Appeals Council. *Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1269 (11th Cir. 2007). Since the Plaintiff's evidence was previously submitted to the Appeals Council, it has been considered by the Commissioner and that evidence cannot now be the basis for a sentence 6 remand. *Ingram* at 1269.

### (2) THE COMMISSIONER ERRED IN DISCREDITING THE OPINION OF PLAINTIFF'S TREATING PHYSICIAN

The Plaintiff argues that the ALJ improperly rejected the opinion of Dr. Marina Barkov. [Tr. 268-73]. Dr. Barkov, the treating physician, found the Plaintiff had multiple impairments, including sinus congestion, hypertension, diabetes mellitus, sleep apnea and obesity. The record shows that the Plaintiff was treated conservatively for each impairment. [Tr. 240-67]. Although the Plaintiff had insurance problems, the record shows she was not taking any medications. [Tr. 260]. Dr. Barkov's found the Plaintiff could not lift any weight which is inconsistent with the medical evidence. The Plaintiff did not have an upper-body impairment nor did she have a back impairment or any impairment that would limit her to sitting for only one hour. [Tr. 270-71]. There was no evidence provided that the Plaintiff had significant limitations in reaching, handling or fingering. [Tr. 272]. The record does support the Plaintiff's knee impairment but fails to support Dr. Barkov's restricting of standing for only 20 minutes at a time. [Tr. 270] The ALJ determined that Dr. Barkov's assessment is not supported by her own records or the record as a whole.

Dr. Christopher Davey examined the Plaintiff on October 14, 2003. He reported the Plaintiff's obesity and her arthritis of the knees. Dr. Davey found the Plaintiff vision to be intact, her hypertension controlled and no evidence of neuropathy, retinopathy or a history

of acidosis from her diabetes. [Tr. 136-37]. Dr. Davey also noted that consistent with the Plaintiff's obesity she had very large knees and scars from the arthroscopic surgery. [Tr. 147]. He found the Plaintiff's joints to be normal, full range of motion in her extremities, with no deformity, pain, heat, redness, tenderness, swelling or signs of inflammation. The Plaintiff had no paraspinal tenderness, muscle spasms and normal straight leg raising, in a seated and supine positions. The Plaintiff's sensory, motor and reflexes were normal and gait was normal for her size. The Plaintiff had normal grip strength and the ability to perform fine manipulation. Thus, the objective medical evidence conflicts with Dr. Barkov's opinion.

Dr. Baker treated the Plaintiff from October 30, 2003, through March 9, 2006 and assessed that the Plaintiff had no exertional limitations as a result of her obesity, sleep apnea or fatigue. On December 19, 2003, Dr. Baker performed a bilateral inferior turbinate reduction and endoscopic rhinoscopy. and upon follow-up found that Plaintiff was doing better. [Tr. 17072, 225-38]

On February 3, 2006, Dr. Baker completed a Sleep Disorders Medical Assessment Questionnaire wherein he diagnosed the Plaintiff with:: "[A]llergic rhinosinusitis, exogenous obesity and sleep apnea. Dr. Baker's notes revealed: "[I]n view of the patient's weight, I do not think a uvulopalatoplasty would help very much. Zyrtec does not seem to be helping very much. I told her to stop that, and I prescribed fexofenadine 180 mg. daily.; weight loss was strongly recommended; the patient should have an allergy consult and return in one month". [Tr. 230]. Dr. Baker did suggest that dust and fumes could affect the Plaintiff's sinus condition and his opinion was supported by substantial evidence.

9

**(3) THE ALJ FAILED TO MAKE SPECIFIC FINDINGS AS TO WHY HE FOUND THE CLAIMANT NOT FULLY CREDIBLE AND THEREFORE THIS CASE SHOULD BE REMANDED**

The Plaintiff argues that the case should be remanded for reconsideration of her credibility and further that the ALJ failed to make specific findings as to why he found her not fully credible.

The ALJ properly considered the Plaintiff's subjective complaints of disabling pain and other symptoms. [Tr. 18-25]. When a claimant attempts to establish disability based on her subjective complaints, she must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of the alleged symptoms or that the medical condition could be reasonably expected to give rise to the alleged symptoms. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).

In September 2003, the Plaintiff reported to Linda Appenfeldt, Ph.D., a Licensed Psychologist that her activities of daily living indicate she arises at 6:00 a.m. She reported she drives to and from the grocery store and her daughter assists with lifting and carrying. The Plaintiff states both she and her daughter do the laundry and cooking. The Plaintiff reported that during the daytime she does "a little cleaning and a little reading, and I sleep." The Plaintiff advised Ms. Appenfeldt that she is either picked up or drives to church on Wednesdays, and attends Church from 7:00 to 8:30 p.m. and on Sunday from 11:00 a.m. to 1:00 p.m. The Plaintiff reported she has glaucoma and uses over the counter glasses for reading. [Tr. 134]. Ms. Appenfeldt found the Plaintiff responsible to manage her own funds successfully if she were to receive monthly disability benefits. [Tr. 132-135].

The ALJ further considered the Plaintiff's allegations of glaucoma and loss of vision. The Plaintiff, as noted above, wears over the counter glasses and has a visual acuity of 20/30 of the left eye and 20/20 of the right eye. The Plaintiff contended that her sinusitis conditions is amendable to medical treatment and the medical evidence shows that her sleep apnea improved after the turbinate reductions surgery was done. The Plaintiff admitted that she sleeps well for nine-hours with the constant air pressure machine (CPAP).

The Plaintiff's subjective complaints were undermined by her conservative treatment, lack of side effects, and the effectiveness of her medication, especially the injections to her knee. [Tr. 103-226].

### 4. THE PLAINTIFF CONTENDS THE COURT'S DO NOT ALLOW "SIT AND SQUIRM" JURISPRUDENCE

The Plaintiff contends that the ALJ noted that at the hearing, the Plaintiff (who has maintained that she could only sit for 30 minutes) was able to sit throughout the hearing which went for approximately a half hour. [Tr. 21].

The ALJ properly considered the Plaintiff's demeanor in evaluating her claim. The Eleventh Circuit has held that an ALJ is not prohibited from considering a claimant's appearance and demeanor at the hearing. *Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987). The regulation and SSR 96-7p also allow an ALJ to consider his or her observations of the claimant in assessing the credibility of the claimant's allegations. 20 C.F.R. § 404.1529(c)(3)(vii), 416.929(c)(3)(vii), (4); SSR 96-7p. The ALJ did not apply a "sit and squirm"[4] test. The ALJ did observe the Plaintiff grab a large purse from the floor, put it

---

[4] The "sit and squirm" test involves the ALJ subjectively arriving at an index of traits which he expects the claimant to manifest at the hearing,

around her left shoulder and walk out of the courtroom with a normal gait. [Tr. 21]. These observations undermined the Plaintiff's credibility, as permitted by the regulations, SSR 96-7p and Eleventh Circuit case law. 20 C.F.R. § 416.929(c)(3)(vii), (4) SSR 96-7p.; *Macia*, 829 F.2d at 1011.

The Plaintiff has failed to establish that she has an impairment(s) that could reasonably be expected to produce her alleged symptoms. *Moore v. Barnhar*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005); *see all Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Substantial evidence supports the ALJ's finding that the Plaintiff's allegations were not entirely credible. [Tr. 20-21]. The Plaintiff did not establish that she was as limited as she claimed.

> 5. **THIS CASE SHOULD BE REVERSED AND THE COURT SHOULD FIND THE PLAINTIFF HAS SLEEP APNEA WITH DAILY SOMNOLENCE.**

The Plaintiff argues this case should be reversed as the Plaintiff has the severe impairment of sleep apnea with daily somnolence. The Plaintiff concurs with the ALJ that she has sleep apnea and disagrees that he did not find that she had daily somnolence. The Plaintiff contends that the examining doctor, Dr. Davey, made such a finding and that there is no contradiction or inconsistency in the evidence. The Plaintiff argues that the impairment of sleep apnea with daily somnolence is important because it can affect the determination of her residual functional capacity and impact the weight given to the opinion of Dr. Barkov and to show that the Plaintiff is fully credible.

---

and then denying the claim if the claimant falls short of the index, something the ALJ in the Plaintiff's case did not do. *Freeman v. Schweiker*, 681 F.2d 727,731 (11th Cir. 1982).

The Court finds that this contention is without merit. The ALJ's finding that sleep apnea was a severe impairment incorporates the Plaintiff's claim of somnolence because it is a possible result of sleep apnea. Somnolence is not an impairment, but rather a subjective symptom, (just as pain is a subjective symptom related to arthritis). Additionally, the ALJ noted that Dr. Baker, the ear, nose and throat specialist, reported the Plaintiff's sleep apnea had improved after the turbinate reduction surgery. [Tr. 21, 170].

## III. CONCLUSION

For the foregoing reasons, the ALJ's decision is consistent with the requirements of law and supported by substantial evidence. Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g). The plaintiff is not entitled to a period of disability or disability insurance benefits under sections 216(I) and 223 of the Social Security Act. The plaintiff is not eligible for supplemental security income under sections 1602 and 1614(a)(3)(A) of the Social Security Act. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE and ORDERED** in Chambers at Ft. Myers, Florida, this 3rd day of March 2009.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copes: All Parties of Record